IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES MCDONALD, JR.,
Plaintiff,

                                                          Civil No. JFM 08-02063

v.

METROPOLITAN LIFE INSURANCE CO.,
Defendant.

MEMORANDUM

Plaintiff Charles McDonald, Jr. ("Plaintiff") has filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, challenging the termination of his long-term disability ("LTD") benefits by Defendant Metropolitan Life Insurance Company ("MetLife"). Both parties have filed motions for summary judgment. For the reasons that follow, I will grant Defendant's motion and deny Plaintiff's motion.

I. Factual Background[1]

Plaintiff began employment with Constellation Energy Group ("CEG") on June 10, 1970. As a CEG employee, Plaintiff was a participant in the Constellation Energy Group Long-Term Disability Plan ("the Plan"), which is governed by ERISA. MetLife is the Plan's Claim Administrator and a fiduciary. (Mem. Supp. Def.'s Mot. Summ. J. ("Def. Mem.") at 2; Mem. Supp. Pl.'s Mot. Summ. J. ("Pl. Mem.") at 2.)

On January 15, 2007, Plaintiff experienced a significant headache while driving. He pulled his vehicle to the side of the road and passed out. When he regained consciousness, he noticed a tremor in his left arm. After receiving medical treatment, Plaintiff's treating physicians ruled out a stroke or the onset of Parkinson's disease. (Def. Mem. at 2).

---

[1] The following facts are uncontroverted or set forth in the light most favorable to the Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

1

On January 18 or 19, 2007, Plaintiff ceased his active employment with CEG. (Def. Mem. at 2-3; Pl. Mem. at 2.) At that time he was employed as a Supervisor - Distributions Operations and was responsible for overseeing employees working on electrical systems. (*Id.*) According to a vocational consultant who evaluated Plaintiff in May 2008, the position, "requires constant standing, walking, lifting, and driving and is in the medium physical work demand classification." (Pl. Mem. at 2.)

In March 2007, Plaintiff submitted a claim for LTD benefits under the Plan. In evaluating the claim, Defendant had the opportunity to view a number of medical records. Dr. George Weiner, Plaintiff's primary care physician, provided a summary dated May 30, 2007 in which he noted "persistent coarse tremor of the upper left extremity" and stated that Plaintiff "remains unable to return to work at this time and will probably require long term disability." Dr. Weiner also provided an Attending Physician's Statement on July 2, 2007, indicating, "Patient has a significant loss of psychological, personal and social adjustment (severe limitations)." Plaintiff also submitted information from two neurologists, one of whom believed he could return to work and one of whom believed he could not. Additionally, a neuropsychologist concluded that Plaintiff's cognitive functions were normal although he was likely depressed. (Def. Mem. at 4-5.)

On July 18, 2007, Defendant approved Plaintiff's long-term disability claim and determined that Plaintiff became disabled on January 19, 2007. At that time MetLife stated, "we have determined that medical supports a severity of impairment that would prevent you from returning to work at this time." (Pl. Mem. at 3.) Under the relevant portion of the Plan, "Disability" is defined as follows:

> [D]ue to Sickness or as a direct result of accidental injury:
>
> - You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and . . .
> - You are, after [the "Elimination Period"]:
>   - unable to earn more than 60% of your Predisability Earnings at any gainful occupation for any employer in Your Local Economy; and

       o   unable to perform the duties of any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

(Def.'s Mot. at 3-4; Pl.'s Mot. at 3.)

MetLife believed subsequent review would be necessary, and Plaintiff was under an ongoing obligation to continue to provide proof of his Disability as defined by the Plan to continue receiving benefits. Thereafter, Plaintiff's doctors continued to forward his medical records to MetLife. (Def. Mem. at 5.) In a questionnaire dated July 24, 2007, Dr. Weiner noted that Plaintiff continued to be disabled because of "incapacitating tremors, felt to be related to his emotional state." In a questionnaire dated October 6, 2007, Dr. Weiner wrote that Plaintiff's tremors were unimproved and Plaintiff remained disabled from "depression and agitation as evidenced by 'psychogenic tremors and GI symptoms.'" (Pl. Mem. at 5.)

On October 22, 2007, MetLife referred Plaintiff's entire claim file, including his medical records, for review by an independent physician consultant, Dr. Marie-Claude Rigaud. The consultant, who is board certified in psychiatry, returned a report on November 6, 2007 expressing the opinion that Plaintiff's medical records did not manifest incapacity to the extent of being Disabled. Specifically, Dr. Riguad wrote that "there is no definitive clinical data to suggest that the Claimant would not be able to meet the essential functions of his supervisor job." (Pl. Mem. at 5; Def. Mem. at 5-6.) Accordingly, MetLife decided to terminate Plaintiff's receipt of LTD benefits, effective November 29, 2007. In its letter setting forth its decision, MetLife explained that Plaintiff's complaints were primarily subjective, his neuropsychiatric examination revealed no abnormal findings, and there was insufficient evidence to support a conclusion that he could not perform the duties of his previous job. (Pl. Mem. at 6.)

Plaintiff submitted a timely appeal on May 13, 2008. The appeal included additional medical documentation, a vocational assessment in support of Plaintiff's claim, a Social Security Disability Insurance award letter, and a duplicate copy of his job description. (Def. Mem. at 6-8; Pl. Mem. at 6.) MetLife referred the claim to two additional independent physician consultants, a neurologist and a psychiatrist. On June 3, 2008, the consultants conducted their reviews of Plaintiff's records and unsuccessfully attempted to speak to his treating physicians. The

neurologist concluded that from a neurology perspective Plaintiff was not unable to perform his job. The psychologist concluded that Plaintiff's mental status results were essentially normal and that the psychiatric testing did not provide evidence that Plaintiff was functionally impaired such that he could not perform his job. MetLife submitted the consultant reports to Plaintiff's treating physicians, seeking their review and comment. Dr. Weiner was the only doctor to respond. He wrote in part, "Having personally seen and examined [Plaintiff] on many occasions, it is clear to me that he remains physically incapacitated by his movement disorder and emotionally disabled by chronic anxiety, despite appropriate medication and counseling." Defendant characterizes Dr. Weiner's response as incomplete and as failing to provide any objective evidence in support of his disagreement with the independent consultants. (Pl. Mem. at 8-9; Def. Mem. at 7-8.)

On June 24, 2008, Defendant issued a letter upholding its decision to terminate Plaintiff's benefits. Plaintiff filed suit in this Court on August 8, 2008. (Pl. Mem. at 9-10; Def. Mem. at 8.)

## II. Standard of Review

A motion for summary judgment should be granted when the record establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law of the cause of action determines which facts are material. *Bowling v. PBG Long-Term Disability Plan*, 584 F. Supp. 2d 797, 802 (D. Md. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute about a material fact is genuine and summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

The Plan is governed by ERISA. Under Section 502(a)(1)(B) of ERISA, a "civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In reviewing a plan administrator's

decision to deny benefits, a court must determine whether the plan gives the administrator the discretion to construe uncertain terms and determine eligibility for benefits. *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 340-41 (4th Cir. 2000); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). If the plan does not grant discretionary authority, the court reviews the employee's claim *de novo*, looking to the plan's terms and other manifestations of the parties' intent. *Booth*, 201 F.3d at 341. If, on the other hand, the plan confers discretion on the administrator, the court reviews the administrator's decision for abuse of discretion. *See id.* at 341-42.

In the instant case, the Plan gives its administrator discretion to construe the terms of the Plan. Plaintiff agrees that the abuse of discretion standard of review applies. (Pl. Mem. at 14). Accordingly, the standard of review here is abuse of discretion.

Under abuse of discretion review, an administrator's decision will not be disturbed if it is reasonable, even if the court "would have come to a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008); *see also Booth*, 201 F.3d at 341; *Firestone*, 489 U.S. at 111. An administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Evans*, 514 F.3d at 322 (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)). Administrators' decisions must "adhere both to the text of ERISA and the plan to which they have contracted; to rest on good evidence and sound reasoning; and to result from a fair and searching process." *Evans*, 514 F.3d at 322-23.

The Fourth Circuit has set forth a nonexclusive list of factors a court may consider when determining whether an exercise of discretion is reasonable:

> (1) [T]he language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-43.

5

III. ERISA Benefits Decision

The issue in this case is whether MetLife abused its discretion in terminating Plaintiff's LTD benefits. Plaintiff claims that MetLife abused its discretion by failing to conduct a full and fair review. Specifically, Defendant neither performed a vocational review nor conducted an actual physical examination of Plaintiff as permitted by the terms of the policy. (Complaint at 8.) Plaintiff's argument is without merit.

The record contains numerous medical records collected by MetLife from Plaintiff's various health professionals, and the record indicates that MetLife's decision resulted from a principled decision-making process. In addition to reviewing the records created by Plaintiff's doctors, MetLife also requested reviews from three independent consultants. The consultants referred to Plaintiff's mental status examinations and formal neuropsychological testing in conjunction with his job summary in concluding that he was not Disabled. (Def. Mem. 9-10.) After receiving the consultants' evaluations, MetLife requested responses from Plaintiff's doctors, and took the received response into account when evaluating Plaintiff's claim.

As a preliminary matter, the fact that MetLife initially awarded LTD benefits to Plaintiff does not weigh in favor of Plaintiff's position. Contrary to Plaintiff's contention, the initial grant of benefits did not satisfy Plaintiff's burden to prove that he is disabled. (Def. Mem. at 19.) MetLife was entitled to continue evaluating Plaintiff's condition after initially awarding the benefits. *See, Hensley v. Int'l Bus. Machines Corp.*, 123 Fed. App'x 534, 538 (4th Cir. 2004) ("[T]he fact that MetLife initially awarded benefits to [Plaintiff] does not mean that its subsequent termination of those benefits was the result of unprincipled reasoning."). Termination after further investigation and review may be entirely appropriate. *See, e.g.*, *id.*

Plaintiff also argues that MetLife's explanation of its decision to credit the consultants' determinations as opposed to Mr. Weiner's was insufficient. Notably, Plaintiff does not challenge the consultants' qualifications or credentials. As this Court has observed in similar cases, "It is not an abuse of discretion for an administrator to adopt the position of one doctor over another." *Bowling*, 584 F. Supp. 2d at 805 (citing *Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 308 (4th Cir. 2004)). Furthermore, the Supreme Court has explicitly rejected a

6

requirement that plan administrators give greater credit to treating physicians than opinions of plan consultants. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 834 (2003); *see also White v. Sun Life Assurance Co.*, 488 F.3d 240, 254 (4th Cir. 2007) ("To be sure, ERISA does not impose a treating physician rule, under which a plan must credit the conclusions of those who examined or treated a patient over the conclusions of those who did not."). MetLife was under no obligation to explain why it credited "reliable evidence that conflicts with a treating physician's evaluation." *Nord*, 538 U.S. at 834. It was not an abuse of discretion for MetLife to rely on its three consultant physicians' reports without explicitly explaining its decision to do so.

      The parties also contest the significance of vocational assessment. According to Defendant, the vocational assessment procured by Plaintiff provided no objective evidence, instead recounting the Plaintiff's claimed ailments and leaping to the conclusory assertion that he is Disabled. In the absence of objective findings as to Plaintiff's capacity to perform his job, Defendant found the assessment unsupportive of Plaintiff's claims. (Def. Mem. at 16.) Plaintiff impliedly finds the vocational assessment probative and further argues that "Defendant should have obtained a vocational opinion" to assess his ability to work. (Pl. Mem. at 19.) Plaintiff cites no binding authority for this proposition, instead relying on an Eighth Circuit opinion. (*Id.* (citing *Gunderson v. W.R. Grace Long and Co. Long Term Disability Income Plan*, 874 F.2d 496, 498 (8th Cir. 1989)).) Neither the Fourth Circuit nor any District Court within it has ever cited this case, and this Court finds no evidence that the Fourth Circuit has held that a vocational assessment is needed in the course of a full and fair review. *Accord Piepenhagen v. Old Dominion Freight Line, Inc.*, --F. Supp. 2d --, 2009 WL 528625, at *9 (W.D. Va. 2009) ("Not a single court has held that vocational evidence is required per se."). Because no vocational assessment is required and MetLife nevertheless reviewed the report by the vocational consultant of Plaintiff's choice, the Defendant's decision not to secure an additional vocational assessment does not show an abuse of discretion. *See, e.g.*, *Krajewski v. Metropolitan Life Ins. Co.*, No. RDB 08-2406, 2009 WL 2982959, at *7 (D. Md. Sept 14, 2009) ("Considering *Piepenhagen* holds that some benefits determinations require no vocational analysis in the first place, and that MetLife reviewed the report by the vocational consultant of [Plaintiff's] choice, [Plaintiff's] argument fails.").

7

In light of the above, MetLife was not unreasonable in concluding that Plaintiff was able to perform his job.  Plaintiff's motion for summary judgment is therefore denied, and Defendant's motion is granted.

- DATE:  <u>10/19/2009</u>     <u>  /s/                              </u>
  J. Frederick Motz
  - United States District Judge